The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 28, 2018

## 2018COA88

**No. 15CA0352, People v. Wambolt — Crimes — Driving After Revocation Prohibited — Aggravated Driving After Revocation Prohibited — DUI — Driving Under Restraint; Constitutional Law — Fifth Amendment — Double Jeopardy**

The defendant was charged with aggravated driving after revocation prohibited (ADARP), driving under the influence (DUI), and driving under restraint (DUR). During a first trial, the jury was instructed on the elements of driving after revocation prohibited (DARP) and given a special interrogatory verdict form on the ADARP charge. The jury returned guilty verdicts on DARP and DUR, but hung on the DUI charge, and thus did not complete the ADARP special interrogatory. The defendant was then retried in a two-phase trial. In the first phase, the jury returned a guilty verdict on driving while ability impaired, a lesser included offense of DUI. In

the second phase, the jury completed a special interrogatory finding that the prosecution had proved the ADARP charge.

A division of the court of appeals concludes that, under the circumstances of this case, the defendant was unconstitutionally tried twice for the same offense. After the first jury returned a guilty verdict on DARP, the prosecution retried the elements of that offense during the second trial. As a result, the division vacates the ADARP conviction and directs the trial court to reinstate the first DARP verdict.

The division also considers whether the defendant's DUR and DARP convictions should have merged. Analyzing the effect of *People v. Rock*, 2017 CO 84, 402 P.3d 472, on *Zubiate v. People*, 2017 CO 17, 390 P.3d 394, the division concludes that DUR is a lesser included offense of DARP. Thus, the trial court erred in entering both convictions. However, the division further concludes that the error here was not plain because it was not obvious.

Finally, the division rejects the defendant's contention that the trial court erred in denying his motion to suppress.

Accordingly, the division affirms in part, vacates in part, and remands the case with directions.

COLORADO COURT OF APPEALS                                    2018COA88

Court of Appeals No. 15CA0352
Elbert County District Court No. 13CR66
Honorable Jeffrey K. Holmes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Lee Wambolt,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS
Division I
Opinion by JUDGE TAUBMAN
Bernard and Welling, JJ., concur

Announced June 28, 2018

Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel K. Mercer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     What happens when someone repeatedly drinks, drives, and, as a result, loses his or her driver's license, and then drinks and drives again?  This case presents two novel issues that call on us to answer this question.  The issues are not novel because they have not arisen before; they are novel because they have arisen in a new context.  In recent years the General Assembly has twice amended one applicable statute, and our appellate courts have issued multiple, sometimes inconsistent, decisions.

¶ 2     Addressing the issues presented here is more challenging because of the unusual procedures followed by the trial court.  Defendant, Jason Lee Wambolt, was tried twice for multiple offenses, and the second trial was divided into two parts.  Consequently, the two principal issues in this appeal concern Wambolt's right to be free from double jeopardy and whether two convictions merge.  In a third issue, Wambolt challenges the trial court's denial of his motion to suppress certain evidence used against him.

¶ 3     We affirm in part, vacate in part, and remand with directions.

## I. Background

¶ 4      In November 2013, police in Agate, Colorado, were dispatched to respond to a potential menacing incident.  The reporting party communicated that a man riding a motorcycle had chased him and threatened him, possibly with a weapon.  When police arrived at the scene, Wambolt admitted that he had been the man riding the motorcycle.  The officers observed that Wambolt appeared intoxicated, and he confessed that he had been drinking prior to riding the motorcycle.

¶ 5      Wambolt was eventually charged with aggravated driving after revocation prohibited (ADARP), driving under the influence (DUI), driving under restraint (DUR), and two counts of violating a civil protection order.  He did not dispute that his driver's license had been revoked or that he had been deemed a habitual traffic offender.  However, the defense's theories of the case were that Wambolt did not know that his driver's license had been previously revoked and, as to the DUI charge, that he drank only after he drove his motorcycle.  At the first trial, the jury was instructed on the elements of driving after revocation prohibited (DARP) and given a special interrogatory verdict form on the ADARP charge.  The jury

returned guilty verdicts on DARP and DUR, but hung on the DUI charge, and thus did not complete the ADARP special interrogatory. At the second trial, Wambolt was convicted of driving while ability impaired (DWAI), and the second jury completed an interrogatory finding the People had proved ADARP. Ultimately, the trial court entered convictions on ADARP, DUR, and DWAI, and Wambolt later pleaded guilty to the protection order violations.

¶ 6　　Wambolt appeals the judgment of conviction entered on the jury verdicts finding him guilty of ADARP, DUR, and DWAI. Specifically, he contends that (1) he was tried twice for the same offense in violation of double jeopardy protections; (2) the trial court plainly erred in entering convictions for DUR and DARP because those convictions should have merged; and (3) the trial court's erroneous denial of his motion to suppress requires reversal. We agree with his first contention and therefore vacate the conviction for ADARP. However, we disagree with his final two contentions and thus affirm in all other respects.

## II. Double Jeopardy

¶ 7　　Wambolt contends that he was unconstitutionally tried twice for the same offense when, after the first jury did not complete the

3

ADARP special interrogatory, the People retried him on that charge. We agree that the second prosecution was in violation of the Double Jeopardy Clauses of the United States and Colorado Constitutions and therefore vacate the ADARP conviction and remand for the trial court to reinstate the first jury's verdict.

¶ 8    The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. Axiomatically, the federal Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Wambolt invokes both of these protections. We review double jeopardy claims de novo. *People v. Frye*, 2014 COA 141, ¶ 30, 356 P.3d 1000, 1006.

¶ 9    As we noted at the outset, this case presents a unique set of circumstances, both because of the unusual way in which the prosecution proceeded and because the relevant statutes and case law have changed over the course of the last few years. We will

therefore set forth the facts in some detail, as well as the evolution of the law.

## A. The Trials

¶ 10    As noted, Wambolt was charged with ADARP under section 42-2-206(1)(b), C.R.S. 2013, along with DUI and DUR. Wambolt was first tried on these charges in July 2014.

¶ 11    At the beginning of voir dire, the trial court instructed the jury that the People had charged Wambolt with ADARP. However, in the final jury instructions, the jury was instructed that Wambolt was charged with DARP, not ADARP. The jury also received an elemental instruction on DARP, not ADARP.

¶ 12    Additionally, the jury was given a special interrogatory stating that it was to be completed only if the jury found Wambolt guilty of DARP and either DUI or DWAI.[1] There were then two possible

---

[1] The Model Criminal Jury Instructions in effect at the time of Wambolt's first trial in July 2014 did not separately address DARP and ADARP. Instead, the pattern instruction on "driving after judgment prohibited" contained a note stating the following:

> For cases in which the defendant is alleged to have committed aggravated driving while judgment prohibited . . . there must be a determination beyond a reasonable doubt that

5

options: first, "We, the jury, find that it has been proven beyond a reasonable doubt that the defendant committed the crimes of [DARP] AND either [DUI] or the lesser offense of [DWAI] as part of the same criminal episode"; and, second, "We, the jury, do not so find."

¶ 13    After deliberating for almost seven hours, the jury sent a note to the trial court stating that it had reached a verdict on the DARP and DUR charges, but could not reach a verdict as to the DUI

---

he or she committed [one of the crimes enumerated in section 42-2-206(1)(b)(I), C.R.S. 2013]. Additionally, with respect to the felony offense, actual knowledge of the revocation as a habitual offender is an essential element . . . .

COLJI-Crim. 42:03 (2008). The prosecutor read this note during a jury instructions conference in support of his position that the "actual knowledge" element should be included in the DARP instruction. The trial court asked the prosecutor if the aggravating DUI offense should also be listed as an element in the jury instruction, to which the prosecutor responded that it "was just cleaner to do it with an interrogatory." The defense did not object to the use of the special interrogatory. However, no discussion occurred as to whether ADARP was a sentence enhancer or a separate offense. *But see* COLJI-Crim. A (2008) (stating, under heading "Elements and Sentence Enhancers," that, "[i]n general, sentence enhancers are presented by way of interrogatory . . . and elements are presented in the instruction defining the offense").

6

charge. The jury did not complete the special interrogatory. The court declared a mistrial on the DUI offense.

¶ 14    After the jury was dismissed, the prosecutor argued that the jury had returned "only . . . half of one of the verdicts" because the jury had found Wambolt guilty of DARP, but not ADARP. The trial court asked the parties to address whether Wambolt could be retried on the ADARP charge. After a hearing, the trial court asked that the parties brief the issue.

¶ 15    In response, the People submitted a "Memorandum regarding operation of the same criminal episode penalty enhancer under C.R.S. § 42-2-206(1)(b)(I)(A) and (B)." The People argued that the aggravated portion of ADARP was a sentence enhancer, not a substantive element of the offense, and thus resubmitting the ADARP charge to the jury would not violate the Double Jeopardy Clauses. The People concluded, "There is only one offense: [DARP]." However, in the alternative, the People argued that even assuming DARP was a lesser included offense of ADARP, retrial on the ADARP charge was permissible because the jury hung on that count.

¶ 16    In reply, Wambolt argued that DARP was a lesser included offense of ADARP and that section 18-1-301(1)(a), C.R.S. 2017,

7

precluded retrial on a greater offense after conviction of a lesser offense. However, Wambolt argued in the alternative that if the trial court permitted the People to retry the ADARP count, the second jury should be required to decide every element of the offense to protect his right to have a single tribunal decide that charge. *See People v. Segovia*, 196 P.3d 1126, 1133 (Colo. 2008) ("Double jeopardy prevents the government from repeatedly trying to obtain a conviction against an accused, but also protects a defendant's right to have a verdict returned by a particular jury.").

¶ 17    In a thorough bench ruling issued before the second trial, the trial court concluded that the enumerated aggravating offenses in section 42-2-206(1)(b)(I), C.R.S. 2013, established a sentence enhancer of DARP. It determined that Wambolt could be constitutionally retried on ADARP and announced that the second trial would be conducted in two phases. First, the jury would decide only the DUI charge. If it returned a guilty verdict, the same jury would then consider the ADARP charge, again via a special interrogatory. The trial court stated:

> [T]he jury will not be asked to find guilt or not
> guilt as to DARP, but, rather, to make a
> finding with regard to the interrogatory. So

they will be given the elements. They will be told that they must find beyond a reasonable doubt that the elements have been established for purposes of a determination that -- of a "yes" decision regarding the interrogatory, that is, there has been proof beyond a reasonable doubt the elements of DARP, of DUI, and that they were part of the same criminal proceeding. But the jury will not be asked to return a verdict, again, regarding the offense of DARP.

¶ 18    In October 2014, the second trial proceeded according to that bench ruling. During the first "phase," the jury found Wambolt guilty of DWAI, a lesser included offense of DUI. Then, the trial court revealed to the jury that it would consider a second charge, which the trial court described as "the offense of driving after revocation prohibited and driving with ability impaired as part of the same criminal episode."

¶ 19    Once again, the jury was not given an ADARP instruction. Instead, the jury was given an instruction listing the elements of DARP.[2] Additionally, the jury was given an interrogatory, again

---

[2] On September 1, 2014, — after Wambolt's first trial was completed — the Colorado Supreme Court's Model Criminal Jury Instructions Committee issued updated pattern instructions. Relying on *Griego v. People*, 19 P.3d 1, 6 n.6 (Colo. 2001), and *People v. Wilson*, 114 P.3d 19, 26 (Colo. App. 2004), the 2014 model

with two possible choices: first, "We, the jury, unanimously find that the prosecution has proven beyond a reasonable doubt that defendant committed all the elements of [DARP], as defined in [the elemental instruction], and that the prosecution has proven beyond a reasonable doubt that defendant committed [DARP] and [DWAI] as a part of the same criminal episode"; and, second, "We, the jury, do not so find." The jury checked the first line of the special interrogatory.

---

instructions stated that ADARP "is not a sentence enhancement provision for the offense of [DARP]; it is a separate crime." COLJI-Crim. 42:06 cmt. 4 (2014); *see also* COLJI-Crim. 42:06 cmt. 4 (2017) (same). Thus, since September 2014, separate pattern instructions have existed for DARP, COLJI-Crim. 42:05 (2017), and ADARP, COLJI-Crim. 42:06.

During the first phase of Wambolt's second trial, the parties and the trial court discussed the 2014 model instructions. Defense counsel noted that the instructions initially tendered by the prosecutor were outdated, and several of the tendered instructions had been replaced. However, the parties did not specifically discuss the change in the DARP and ADARP pattern instructions. Neither the parties nor the trial court addressed whether the jury for the second trial should be given the new pattern ADARP instruction. Further, near the close of the second phase of the second trial, the trial court asked the parties whether they wanted to tender any instructions in addition to the DARP instruction; in response, neither party suggested, or even mentioned, the new ADARP pattern instruction.

¶ 20     As a result, the trial court entered convictions for ADARP, DUR, and DWAI.

## B.  Section 42-2-206

¶ 21     Section 42-2-206, the statute establishing DARP and ADARP, has been amended since Wambolt was charged and tried.

¶ 22     The definition of DARP has not changed: "Any person found to be an habitual offender, who operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, commits a class 1 misdemeanor." § 42-2-206(1)(a)(I), C.R.S. 2017; *see also* § 42-2-206(1)(a)(I), C.R.S. 2013.

¶ 23     In contrast, the definition of ADARP has been amended.  Prior to legislative amendments in 2015, the statute stated that a person committed ADARP "if he or she is found to be an habitual offender and thereafter operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect and, as a part of the same criminal episode, also commits . . . DUI or DUI per se; [or] DWAI." § 42-2-206(1)(b)(I)(A)-(B), C.R.S. 2013.  Under that version of the statute, ADARP was a class 6 felony.  § 42-2-206(1)(b)(II), C.R.S. 2013.

11

¶ 24    However, subsections 206(1)(b)(I)(A) and (B) were repealed in 2015. *See* Ch. 262, sec. 4, § 42-2-206(1)(b), 2015 Colo. Sess. Laws 996. Thus, under the statute in effect today, Wambolt could not have been convicted of ADARP on the basis of the aggravating DWAI offense. ADARP is now a class 1 misdemeanor. § 42-2-206(1)(b)(II), C.R.S. 2017.

¶ 25    Additionally, a 2010 amendment to section 42-2-206 clarified that, if a defendant was convicted of both ADARP and the aggravating offense of DUI, DUI per se, or DWAI, the convictions should not merge. Ch. 258, sec. 3, § 42-2-206(1)(b), 2010 Colo. Sess. Laws 1158; *see* § 42-2-206(1)(b)(III), C.R.S. 2017. That provision superseded several decisions from divisions of this court that had held that the underlying aggravating offense should merge into an ADARP conviction. *See People v. Valdez*, 2014 COA 125, ¶¶ 28-32, 411 P.3d 94, 100-01 (summarizing cases). This provision was also amended in 2015 to address the repeal of section 42-2-206(1)(b)(I)(A) and (B). Ch. 262, sec. 4, § 42-2-206(1)(b)(III), 2015 Colo. Sess. Laws 996; *see* § 42-2-206(1)(b)(III)(A) ("If a defendant is convicted of [ADARP] based upon the commission of DUI, DUI per se, or DWAI . . . as that crime existed before August 5, 2015 . . .

[t]he court shall convict and sentence the offender for each offense separately . . . .").

## C.  Case Law

¶ 26     Just as the relevant statutory law has changed, so too has the relevant case law.

¶ 27     First, our appellate courts have disagreed whether the aggravating offenses set forth in ADARP are sentence enhancers to the offense of DARP or, in the alternative, whether they are elements of the offense of ADARP.

¶ 28     In *People v. Wilson*, a division of this court rejected the People's contention that the aggravating offenses establishing ADARP are "merely sentence enhancers" to the offense of DARP and instead held that section 42-2-206(1)(b) sets forth the elements of the separate crime of ADARP, which includes six enumerated aggravating offenses.  114 P.3d 19, 26 (Colo. App. 2004).  Thus, the *Wilson* division concluded that the aggravating offenses listed in that subsection are essential elements of the crime of ADARP.  *Id.*

¶ 29     In contrast, another division agreed with the People that the aggravating offenses were sentence enhancers of DARP.  *People v. Zubiate*, 2013 COA 69, ¶ 40, 411 P.3d 757, 765, *aff'd*, 2017 CO 17,

390 P.3d 394. Specifically, in *Zubiate*, the division held that, because under the pre-2015 version of section 42-2-206 "the other driving offenses listed in section 42–2–206(1)(b)(I) raise[d] DARP's offense level, they [we]re sentence enhancers." *Id.* at ¶ 40, 411 P.3d at 765. The supreme court affirmed the *Zubiate* division's holding, but did not address whether DARP and ADARP were distinct offenses.[3]

¶ 30     Second, apart from the specific issue of whether DARP is a lesser included offense of ADARP, the case law has changed with regard to the test for whether one offense is a lesser included of another. In 2017, the supreme court decided a series of cases, including *Zubiate*, in an effort to clarify the statutory elements test. The test, as stated in *Reyna-Abarca v. People*, is as follows: "[A]n offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the

---

[3] In *Griego*, the supreme court noted in dicta that a 1999 amendment to section 42-2-206 created "the new offense" of ADARP. 19 P.3d at 6 n.6. As described above, the model jury instructions cite *Griego* for the proposition that DARP and ADARP are separate offenses. However, aside from that footnote, the supreme court did not address the relationship between DARP and ADARP in *Griego*.

greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." 2017 CO 15, ¶ 3, 390 P.3d 816, 818; *see also People v. Rock*, 2017 CO 84, ¶ 16, 402 P.3d 472, 478 (clarifying the meaning of "contains" as used in *Reyna-Abarca*), *reh'g denied* (Oct. 2, 2017).

¶ 31    Third, double jeopardy analysis from divisions of this court has also seen recent change. Two decisions are of particular relevance here. In *People v. Aguilar*, a division of this court held, as a matter of first impression, that the Double Jeopardy Clauses do "not bar retrial of a greater offense when a jury deadlocks on that charge but convicts on a lesser included offense." 2012 COA 181, ¶ 17, 317 P.3d 1255, 1259. More recently, in *People v. Beller*, the division concluded that the Double Jeopardy Clauses did not bar retrying a defendant on a felony murder charge when a first jury acquitted him of the predicate offenses of aggravated robbery, but hung on the felony murder count. 2016 COA 184, ¶ 2, 411 P.3d 1145, 1148. The *Beller* division relied on a "continuing jeopardy" theory, reasoning that "the greater and lesser included offenses were tried together under the same indictment, jeopardy terminated as to one of the offenses, but did not end on the charge sought to be

15

retried." *Id.* at ¶ 24, 411 P.3d at 1151 (quoting *United States v. Jose*, 425 F.3d 1237, 1245 (9th Cir. 2005)). In so holding, the *Beller* division rejected contrary federal case law that "a criminal defendant may not be retried for a crime following an acquittal or conviction on a lesser included or greater inclusive offense." *Id.* at ¶ 20, 411 P.3d at 1150 (quoting *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004)).

### D. Analysis

¶ 32    Wambolt contends that his right to be free from being twice placed in jeopardy for the same offense was violated when the People were permitted to retry him on the ADARP charge after the first jury had convicted him of DARP. We agree. However, our conclusion stems from the unusual circumstances of this case.

¶ 33    As they did in the trial court, both Wambolt and the People focus their arguments on whether the aggravating offenses in section 42-2-206(1)(b)(I) constitute a sentence enhancement of DARP or whether DARP is a lesser included offense of ADARP.

¶ 34    Contrary to his argument in the trial court, Wambolt now contends that the aggravated aspect of ADARP is a sentence enhancer. "[A] sentence enhancement provision is not an element

16

of the offense charged." *Armintrout v. People*, 864 P.2d 576, 580 (Colo. 1993). Thus, Wambolt argues, he was first convicted and then retried for DARP because the aggravated aspect of ADARP is not an element and thus there is no separate ADARP offense.

¶ 35 For their part, the People have also reversed course, and now argue that DARP is a lesser included offense of ADARP. Relying on *Aguilar* and *Beller*, the People contend that jeopardy did not terminate on the greater offense of ADARP despite the first jury's guilty verdict on DARP. Thus, under their argument, retrial on ADARP was permissible because the jury hung on that count.

¶ 36 We conclude that we need not enter that legal thicket because, under the circumstances here, Wambolt was effectively tried for DARP, not ADARP, during both trials. The parties' arguments on appeal are premised on the assumption that Wambolt was tried for ADARP during both trials. However, a review of the record reveals that Wambolt was effectively tried for DARP twice, and he was not properly tried for ADARP.

¶ 37 Because of the way the case was presented during the first trial, the first jury returned a verdict only on DARP. Although Wambolt had ostensibly been charged with ADARP, not DARP, the

17

trial court told the jury that he had been charged with DARP. *See* COLJI-Crim. E:02 (2017) ("The defendant is charged with committing the crime[s] of [ ] . . . ."). Further, the jury was given an elemental instruction on DARP. As noted, the jury was not given an elemental instruction on ADARP.

¶ 38 It is well established that "the trial court has a duty to instruct the jury properly on all of the elements *of the offenses charged.*" *People v. Bastin*, 937 P.2d 761, 764 (Colo. App. 1996) (emphasis added). Here, the trial court did not instruct the jury on the elements of the charged offense: ADARP. The only "instruction" even indicating that Wambolt had been charged with ADARP was the special interrogatory, and even the interrogatory did not refer to the offense as ADARP. The jury cannot decide a charge on which it was not instructed. *See Sanchez v. People*, 2014 CO 29, ¶ 14, 325 P.3d 553, 558 ("While the precise format and wording chosen for an elemental instruction and accompanying verdict form have never been mandated as a matter of positive law, the model instructions and verdict forms were developed for the specific purpose of evidencing not only unanimous jury agreement concerning the elements of the criminal offense in question, as a factual matter,

but also a unanimous decision to find the defendant guilty of that particular offense.").[4]

¶ 39    As a result, when the second phase of the second trial repeated the same special interrogatory procedure, Wambolt was again tried for DARP. Once again, the jury was instructed on the elements of DARP, not ADARP. Because Wambolt stood convicted

---

[4]    The supreme court's recent decision in *In Re People v. Stackhouse*, 2018 CO 60, ___ P.3d ___, does not change our analysis. There, the first jury had convicted the defendant of two counts of sexual assault on a child (which were later vacated after a Crim. P. 35(c) postconviction challenge), but did not find a pattern-of-abuse sentence enhancer because the jury could not unanimously agree that at least two out of five enumerated alleged contacts had occurred. *Id.* at ¶ 2, ___ P.3d at ___. Before his second trial, the defendant argued that the first jury had necessarily determined that he did not commit two or more incidents of sexual contact by virtue of its "no" response to the sentence enhancer special interrogatory. *See id.* at ¶ 4, ___ P.3d at ___. Thus, the defendant contended, he could not be retried for more than a single assault. *Id.* at ¶ 1, ___ P.3d at ___. The supreme court disagreed and concluded that the defendant could constitutionally be retried on charges of sexual assault on a child based on several alleged incidents of sexual contact. *See id.* at ¶ 13, ___ P.3d at ___.

    *Stackhouse* is inapposite to our conclusion here because our analysis does not hinge on interpreting the first jury's failure to complete the ADARP special interrogatory. We do not read the first, uncompleted special interrogatory as impliedly acquitting Wambolt of ADARP or as necessarily determining any fact. The special interrogatories submitted to the juries in this case are relevant only insofar as they demonstrate that the jury was effectively instructed on, and returned guilty verdicts for, DARP at both trials.

of DARP at the time of the second trial, the second prosecution for that same offense violated his rights under the Double Jeopardy Clauses.

## E.  Plain Error

¶ 40    Having concluded that the trial court violated Wambolt's right to be free from being placed in jeopardy twice for the same offense, we turn to whether that error requires us to vacate the ADARP conviction entered after the second trial.

¶ 41    We "review trial errors of constitutional dimension that were preserved by objection for constitutional harmless error."  *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119.  In contrast, we review unpreserved errors, both constitutional and nonconstitutional, for plain error.  *Id.* at ¶ 14, 288 P.3d at 120.  In *Reyna-Abarca,* the supreme court held that unpreserved double jeopardy claims are subject to plain error review.  ¶ 47, 390 P.3d at 823.  In so holding, the *Reyna-Abarca* court rejected the defendants' contentions that their double jeopardy claims fell within the narrow class of structural errors.  *Id.* at ¶ 46, 390 P.3d at 823.

¶ 42    In their briefing, neither Wambolt nor the People offer a standard of reversal.  Wambolt contends that this contention was

20

preserved, thus implying that we should review the error under the constitutional harmless error standard. In their statement of the standard of review, the People agree that Wambolt preserved this claim.[5]

¶ 43    There is no dispute that in the trial court Wambolt vigorously opposed retrial on the ADARP charge following the guilty verdict on DARP. However, as noted above, Wambolt has adopted on appeal an argument that is diametrically contrary to the argument he made in the trial court. Thus, we will consider his argument

---

[5] In a footnote in their answer brief, the People contend that to the extent Wambolt argues it was error to resubmit the DARP elements to the second jury, Wambolt either waived this claim or invited any error because he requested that, in the event the trial court permitted retrial on the ADARP charge, the second jury be instructed on all of the ADARP elements. We reject the People's contentions. First, we conclude that Wambolt did not waive the double jeopardy claim by asking for all of the ADARP elements to be submitted to the second jury because, rather than relinquishing a known right, Wambolt attempted to *invoke* his right to have a single tribunal decide guilt. *Cf. People v. Rediger*, 2018 CO 32, ¶ 40, 416 P.3d 893, 902 (defining "waiver" as involving "intentional relinquishment of a known right or privilege"). Similarly, we conclude the error was not invited because Wambolt's request was an attempt to mitigate any harm in the event the trial court permitted the People to retry the ADARP charge. *See People v. Pollard*, 2013 COA 31M, ¶ 35, 307 P.3d 1124, 1132 ("[A] party does not invite error when it responds to an error committed by the opposing party.") (citation omitted).

unpreserved and review for plain error. *See Martinez v. People*, 2015 CO 16, ¶ 14, 344 P.3d 862, 868 ("Plain error review is . . . applicable when a party alters the grounds for his objection on appeal.").

¶ 44 We note that there is an apparent inconsistency between the supreme court's application of the plain error standard in *Reyna-Abarca, see* ¶ 81, 390 P.3d at 828, and its application of that standard in *Scott v. People*, 2017 CO 16, 390 P.3d 832. We discuss the discrepancy in greater detail in our analysis below. Here, we conclude that even under the stricter analysis applied in *Scott*, the error was plain.

¶ 45 Under plain error review, we reverse only if the error is "obvious and substantial," *Hagos*, ¶ 14, 288 P.3d at 120, and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction," *id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

¶ 46 First, we conclude the error was obvious. An error is obvious if it violates "a well-settled legal principle." *See People v. Pollard*, 2013 COA 31M, ¶ 40, 307 P.3d 1124, 1133. We acknowledge that the law on whether DARP was a lesser included offense of ADARP

has changed over the course of the last several years. Nevertheless, we conclude the error here ran afoul of an established legal principle, namely, that the Double Jeopardy Clauses "protect[] against a second prosecution for the same offense after conviction." *Brown*, 432 U.S. at 165 (quoting *Pearce*, 395 U.S. at 717). Under the unusual circumstances of this case, the trial court violated that established principle by allowing the People to retry Wambolt — ostensibly for ADARP but effectively for DARP — after the first jury had returned a guilty verdict on the DARP charge. Thus, we consider the error obvious.

¶ 47   Further, we conclude the error was substantial. "[T]he prohibition against double jeopardy is a substantial right guaranteed by the United States and Colorado Constitutions." *People v. Friend*, 2014 COA 123M, ¶ 75, ___ P.3d ___, ___ (*cert. granted in part* Feb. 8, 2016). Thus, the double jeopardy violation here constituted a substantial error. We similarly conclude that the error significantly undermines the reliability of Wambolt's ADARP conviction. *See id.* at ¶ 76, ___ P.3d at ___.

¶ 48   As a result, we vacate the conviction for ADARP entered after the second trial. Wambolt acknowledges that the proper remedy is

to reinstate the first jury's verdict. *See Morris v. Mathews*, 475 U.S. 237, 247 (1986). Thus, we remand to the trial court to reinstate the first jury's judgment of conviction on DARP.

## III. Merger

¶ 49 Wambolt contends that the trial court erred in entering convictions for both DUR and DARP.[6] We agree because we conclude, based on our understanding of the most recent supreme court jurisprudence, that DUR is a lesser included offense of DARP. However, we conclude that the error here was not obvious, and therefore we affirm both convictions.

## A. Standard of Review

¶ 50 We review de novo whether merger applies to criminal offenses. *People v. Zweygardt*, 2012 COA 119, ¶ 40, 298 P.3d 1018, 1026. An unpreserved double jeopardy claim is reviewable for plain error. *Reyna-Abarca*, ¶¶ 45-46, 390 P.3d at 823. Plain errors are "obvious and substantial," *Hagos*, ¶ 14, 288 P.3d at 120, and "cast

---

[6] In a footnote in their answer brief, the People contend that Wambolt's merger claim would "evaporate[]" if Wambolt were convicted of DARP rather than ADARP. We disagree, and therefore address whether DUR merges with DARP.

24

serious doubt on the reliability of the judgment of conviction," *id.* (quoting *Miller*, 113 P.3d at 750).

## B. Applicable Law

### 1. Merger

¶ 51 Unless a statute expressly authorizes multiple punishments for the same criminal offense, the Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit "the imposition of multiple punishments for the same criminal conduct." *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. Thus, absent express authorization from the legislature, a defendant may not be convicted of two offenses for the same conduct if the lesser offense is included in the greater. § 18-1-408(1)(a), C.R.S. 2017.

### 2. DUR

¶ 52 A person commits the offense of DUR if he or she "drives a motor vehicle or off-highway vehicle upon any highway of this state with knowledge that the person's license or privilege to drive, either as a resident or a nonresident, is under restraint." § 42-2-138(1)(a), C.R.S. 2017. The punishment for the offense is greater if the defendant's license is under restraint "solely or partially because of

25

a conviction of DUI, DUI per se, DWAI, or [underage drinking and driving].” § 42-2-138(1)(d)(I).

> “Highway” means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or the entire width of every way declared to be a public highway by any law of this state.

§ 42-1-102(43), C.R.S. 2017. As relevant here, “‘[m]otor vehicle’ means any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways.” § 42-1-102(58). “‘Off-highway vehicle’ means any self-propelled vehicle . . . which is designed primarily for use off of the public highways, and which is generally and commonly used to transport persons for recreational purposes.” § 33-14.5-101(3), C.R.S. 2017; *see also* § 42-1-102(63).

### 3. DARP

¶ 53    A person commits the offense of DARP if he or she is “found to be an habitual offender, who operates a motor vehicle in this state while the revocation of the department prohibiting such operation is

in effect." § 42-2-206(1)(a)(I); *see also* § 42-2-202, C.R.S. 2017 (defining "habitual offender" as used in DARP statute).

### 4. DUR as Lesser Included Offense of DARP

¶ 54    As with Wambolt's first double jeopardy claim, the relevant law in this area has undergone significant recent change.

¶ 55    In *People v. Rodriguez*, a division of this court held that DUR is a lesser included offense of DARP. 849 P.2d 799, 801 (Colo. App. 1992). The division there reasoned that DARP includes all of the elements required by DUR, plus the additional element requiring that the offense "was committed by a person whose privilege to drive had been revoked as an habitual offender." *Id.*

¶ 56    *Rodriguez* apparently governed this issue until another division of this court held to the contrary in 2013. *Zubiate*, ¶ 49, 411 P.3d at 766. In *Zubiate*, the division concluded that the offenses did not merge "because proving the DARP elements does not necessarily establish DUR." *Id.* The division based its conclusion on two distinct grounds. First, DUR requires that the defendant drive on "*any highway*" whereas DARP "is not limited to the highway and applies to private ways as well." *Id.* at ¶ 50, 411 P.3d at 767. Second, DUR requires proof that a defendant was

27

driving a motor vehicle, whereas DARP requires that the defendant was operating a motor vehicle, and "one could operate a vehicle without necessarily driving it." *Id.* at ¶ 51, 411 P.3d at 767.

¶ 57 Then, in 2017, the supreme court decided a series of cases refining the test for determining whether one offense is a lesser included offense of another. First, in *Reyna-Abarca*, the supreme court clarified the statutory elements test, holding that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." ¶ 64, 390 P.3d at 826. In so holding, the supreme court "disavow[ed]" its prior conclusion in *Meads v. People*, 78 P.3d 290 (Colo. 2003), and its "strict elements test" under which one offense is a lesser included of another only "if proof of facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense." *Reyna-Abarca*, ¶¶ 65-67, 390 P.3d at 826-27 (quoting *Meads*, 78 P.3d at 294).

¶ 58 Next, in *Zubiate* (which was decided on the same day as *Reyna-Abarca*), the supreme court affirmed the conclusion of the

28

court of appeals that DUR is not a lesser included offense of ADARP. *Zubiate*, ¶ 15, 390 P.3d at 397. We note that in *Zubiate*, the supreme court analyzed whether DUR merged with ADARP, not DARP. *Id.* at ¶ 13, 390 P.3d at 397. However, the supreme court's analysis did not hinge on — or even mention — the aggravated aspect of ADARP. Thus, this distinction does not affect our analysis of the case. The court reasoned:

> DUR (the purported lesser included offense) contains as an element "driving a motor vehicle or off-highway vehicle." In contrast, aggravated DARP (the purported greater offense) contains as an element "operating a motor vehicle."
>
> . . . .
>
> Accordingly, the offense of DUR contains more elements than the offense of aggravated DARP (i.e., "motor vehicle or off-highway vehicle," as opposed to just "motor vehicle"). As a result, by definition, DUR is not a subset of aggravated DARP.

*Id.* at ¶¶ 18-20, 390 P.3d at 398. Thus, the supreme court's analysis did not rely on either of the two grounds on which the division of this court based its opinion.

¶ 59    A few months later, the supreme court again revisited the statutory elements test in *Rock*, ¶ 16, 402 P.3d at 478. The *Rock*

court clarified that, "[t]o the extent that a lesser offense is statutorily defined in disjunctive terms, effectively providing alternative ways of being committed, any set of elements sufficient for commission of that lesser offense that is necessarily established by establishing the statutory elements of a greater offense constitutes an included offense." *Id.*; *see also Page v. People*, 2017 CO 88, ¶ 11, 402 P.3d 468, 470 ("An offense can . . . be included in another under the statutory elements test when there are multiple ways to commit the lesser, not all of which are included within the greater.").

¶ 60    Applying that rule, the *Rock* court held that second degree trespass was a lesser included offense of second degree burglary as those offenses were charged in that case. ¶ 20, 402 P.3d at 479. The supreme court reached that conclusion despite the fact that "second degree criminal trespass may be committed in ways other than unlawfully entering or remaining in or upon the premises of another and, in fact, the premises at issue in criminal trespass need not even be a building, much less a dwelling." *Id.* at ¶ 20, 402 P.3d at 479. The court acknowledged that this analysis was at odds with its reasoning in *Zubiate*, but did not expressly overrule that

opinion.  Significantly, the *Rock* court held, "To the extent our rationale in *Zubiate* . . . does not reflect the limitation that we adopt today, it is disapproved."  ¶ 16 n.4, 402 P.3d 478 n.4

## C.  Analysis

¶ 61 Wambolt contends that DUR is a lesser included offense of DARP and, as a result, the trial court erred in entering both convictions.  We agree.

¶ 62 In deciding whether DUR is a lesser included offense of DARP, we must grapple with the effect of *Rock* on *Zubiate*.  As discussed, *Zubiate* relied on the inclusion of the "off-highway vehicle" language in the DUR statute.  § 42-2-138(1)(a).  Based on that distinction, a person could commit DUR, but not DARP, while driving an off-highway vehicle; according to the *Zubiate* court, DUR was therefore not a lesser included offense of DARP.  *See Zubiate*, ¶ 19, 390 P.3d at 398.

¶ 63 However, we conclude that the supreme court's holding in *Zubiate* is no longer good law after the *Rock* court disapproved its rationale.  As the *Rock* court clarified, "it is enough that any particular set of elements sufficient for conviction of th[e lesser] offense be . . . contained [in the statutory definition of the greater

31

offense]." ¶ 16, 402 P.3d at 478.  One particular set of DUR

elements — a set including driving a *motor vehicle* — is contained in

DARP.  Under *Rock*, it does not matter that an alternative set of

DUR elements — a set including driving an *off-highway vehicle* — is

not contained in DARP.

¶ 64    We apply the same analysis to the People's argument that

DUR is not a lesser included offense of DARP because DUR requires

that the defendant drive on a "highway" whereas DARP is not so

limited.[7]  As the People state, a person could commit DARP by

---

[7] The People cite section 42-2-206(1)(b)(III)(A), C.R.S. 2017, in support of their related argument that the legislature has "made clear" that alcohol-related offenses should not merge with ADARP. While that provision expressly authorizes a court to enter a conviction for DUI, DUI per se, or DWAI in addition to a conviction for ADARP, it is inapposite in determining whether DUR merges with ADARP or DARP.  *See People v. Zubiate*, 2013 COA 69, ¶ 46, 411 P.3d 757, 766, *aff'd*, 2017 CO 17, 390 P.3d 394 ("The People argue that defendant's convictions do not merge because DUR requires proof that the existing revocation be for a previous alcohol-related offense.  We are not persuaded . . . .").  Further, the People concede that "the alcohol-related aspect of DUR is only a sentence-enhancer."  Thus, to the extent they nevertheless argue that DUR should not merge with ADARP because DUR is sometimes premised on prior alcohol-related offenses, this concession undermines their own argument.  *See Armintrout v. People*, 864 P.2d 576, 580 (Colo. 1993) ("[W]e do not consider sentence enhancement provisions when determining whether one offense is the lesser included of another.").

operating a motor vehicle on a private roadway and, in that scenario, the defendant would not have committed DUR. However, we conclude the People's argument is foreclosed by *Rock.* Again, a particular set of DUR elements — a set including driving on any highway — is contained in DARP. Although a person could commit DARP without committing DUR, he or she could not commit DUR without committing DARP if the offense occurred on a "highway."

¶ 65 Finally, Wambolt contends, the People concede, and we agree that the "drive" element of DUR is included within the "operate" element of DARP because a person who drives a car necessarily operates it. *See People v. Stewart,* 55 P.3d 107, 115 (Colo. 2002), *as modified on denial of reh'g* (Oct. 15, 2002) (noting, in reference to different statutes, that "[t]he term 'operate' is somewhat broader" than "drive").

¶ 66 In sum, we conclude that DUR is a "subset" of DARP such that a "set of elements sufficient for commission of that lesser offense . . . is necessarily established by establishing the statutory elements of" DARP, the greater offense. *Rock,* ¶ 16, 402 P.3d at 478.

33

## D. Plain Error

¶ 67    Having determined that DUR is a lesser included offense of DARP, we turn to whether the trial court plainly erred in this case by entering both convictions based on the same criminal conduct by Wambolt. We conclude that the error was not plain.

¶ 68    As noted, the supreme court in *Reyna-Abarca* held that an unpreserved double jeopardy claim can be raised for the first time on appeal. ¶¶ 45-46, 390 P.3d at 823. Further, the court determined that such claims are ordinarily subject to plain error review. *Id.* at ¶ 47, 390 P.3d at 823; *see also id.* at ¶ 98, 390 P.3d at 832 (Coats, J., concurring in part and dissenting in part) (agreeing with "the majority's plain error analysis").

¶ 69    However, in applying that standard of review, the *Reyna-Abarca* court did not address the requirement, discussed below, that a plain error be obvious. Instead, the supreme court majority stated that "courts have invariably concluded that when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy." *Id.* at ¶ 81, 390 P.3d at 828 (majority opinion). In contrast, in *Scott v. People* — also decided the same day as

*Reyna-Abarca* — the supreme court held that, even assuming the

trial court had erred in entering convictions for both menacing and

aggravated robbery - menaced victim, any error was not plain.

*Scott*, ¶ 14, 390 P.3d at 835.

¶ 70    Thus, as we noted above, there is some tension between the

supreme court's plain error review in these cases.  To the extent

that *Reyna-Abarca* and *Scott* conflict in their application of the plain

error standard, we elect to follow the more traditional analysis in

*Scott*.  As stated in *Scott*,

> [t]o qualify as plain error, an error must
> generally be so obvious that a trial judge
> should be able to avoid it without the benefit of
> an objection.  For an error to be this obvious,
> the action challenged on appeal ordinarily
> "must contravene (1) a clear statutory
> command; (2) a well-settled legal principle; or
> (3) Colorado case law."

¶ 16, 390 P.3d at 835 (citation omitted) (quoting *Pollard*, ¶ 40, 307

P.3d at 1133).  In contrast, an error is not obvious when "either [the

supreme] court or a division of the court of appeals has previously

rejected an argument being advanced by a subsequent party who is

asserting plain error."  *Id.* at ¶ 17, 390 P.3d at 835.

¶ 71    Under that standard, we conclude that the error here was not plain because it was not obvious.  Wambolt was sentenced in January 2015.  At that time, the state of the law was unclear, not only as to whether DUR merged with DARP, but even as to the general test to apply in determining whether one offense was a lesser included of another.

¶ 72    Moreover, as we have discussed, the law in this area has changed even since Wambolt filed his opening brief in this court.  Given the *Rock* court's footnote "disapprov[ing]" of *Zubiate*, the law remains somewhat unsettled.  *Rock*, ¶ 16 n.4, 402 P.3d at 478 n.4.  Thus, Wambolt's reliance on *Henderson v. United States*, 568 U.S. 266 (2013), is unavailing.  In *Henderson*, a substantive legal question was unsettled at the time the trial court acted, but "[b]efore the case was final and at the time of direct appellate review, . . . the question had become settled in the defendant's favor, making the trial court's error 'plain' — but not until that later time."  *Id.* at 269; *see also Romero v. People*, 2017 CO 37, ¶ 1 n.1, 393 P.3d 973, 975 n.1 (noting that supreme court granted certiorari to review whether court of appeals had misapplied *Henderson*;

however, the supreme court did not address that issue).  Those are clearly not the circumstances here.

¶ 73    In light of the conflicting decisions addressing the issue of merger in this context, the trial court did not plainly err in entering the DUR and DARP convictions.

## IV.  Motion to Suppress

¶ 74    Wambolt finally contends that the trial court erred in denying his motion to suppress statements he made after being detained. We disagree.

## A.  Additional Facts

¶ 75    Police officers were dispatched to Agate in response to a report of a man who, while driving a motorcycle, had chased the reporting party for a few blocks and possibly brandished a firearm.  The responding officers, one sergeant and one deputy, were in a neighboring town and did not arrive in Agate until approximately twenty-five to forty minutes later.  While the officers were en route, the 911 dispatcher communicated that the reporting party had called back to clarify that the suspect might not have been armed.

¶ 76    The sergeant saw a motorcycle parked in front of a house about a block away from where the reporting party lived.  A man

37

was leaning into a car parked by the motorcycle.  The sergeant drew his weapon, ordered the man to put his hands out, handcuffed him, and put him in the back of the patrol car.  The deputy was acting as cover and had his rifle in low ready position.

¶ 77   Meanwhile, Wambolt and a woman started to come out of the house and attempted to tell the officers that they had arrested the wrong person, but the sergeant ordered them to go back inside.  They initially complied, but left the house again after a few minutes and came into the front yard.  The sergeant ordered Wambolt to stop and asked his consent to pat him down.  Wambolt consented.  The sergeant frisked Wambolt and found no weapons.

¶ 78   The sergeant then told Wambolt that the officers were investigating a "possible brandishing" of a weapon that involved a motorcycle, and Wambolt said that he had been the one riding the motorcycle.  Although the sergeant found Wambolt compliant and "very easy to get along with," he handcuffed him and placed him in the back of the deputy's patrol car.

¶ 79   After Wambolt spent approximately eleven minutes alone in the patrol car, the officers took him out of the vehicle and removed the handcuffs.  The deputy then advised Wambolt of his rights

38

under *Miranda v. Arizona*, 384 U.S. 436 (1966), which Wambolt waived. In response to the deputy's questions, Wambolt admitted that he had been "drinking heavily," but said he had stopped drinking about an hour before he had driven the motorcycle. Both officers observed that Wambolt was slurring his speech, had red eyes, and smelled of alcohol.

¶ 80 Before trial, Wambolt moved to suppress the statements he made on the night of his arrest. He argued that his statements were the fruit of an unlawful detention and, as a result, should have been suppressed. He also argued that his statements were taken in violation of his *Miranda* rights. After a hearing, the trial court denied the motion, concluding that the officers had conducted a constitutional investigatory stop and that Wambolt voluntarily, knowingly, and intelligently waived his *Miranda* rights and made the statements voluntarily.

## B. Standard of Review

¶ 81 We review a trial court's decision on a motion to suppress as a mixed question of fact and law. *People v. King*, 16 P.3d 807, 812 (Colo. 2001). While we defer to the trial court's findings of fact

when they are supported by sufficient competent evidence in the record, we review conclusions of law de novo. *Id.*

## C. Applicable Law

¶ 82 The United States and Colorado Constitutions prohibit unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7. "The determination of whether a search or seizure is reasonable depends upon the reason for and the extent of the intrusion." *People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999).

¶ 83 Thus, a police officer can lawfully conduct an investigatory detention if three criteria are met: "(1) the officer must have a reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose." *People v. Padgett*, 932 P.2d 810, 814-15 (Colo. 1997) (quoting *People v. Sutherland*, 886 P.2d 681, 686 (Colo. 1994)).

¶ 84 However,

> when officers use force typically associated with an arrest — such as the drawing of weapons, physical restraint, and the use of handcuffs — the prosecution may not characterize the encounter as an investigatory

> stop unless specific facts or circumstances exist that render the use of such force a reasonable precaution for the protection and safety of the officers.

*King*, 16 P.3d at 810. If the People fail to prove that the use of force was necessary for officer safety, the encounter must be characterized as an arrest and, thus, must be supported by probable cause. *See id.* at 817.

¶ 85    Evidence obtained as a result of an illegal arrest must generally be suppressed. *Id.* at 813. However, exceptions to the exclusionary rule "justify admission of evidence even though it is derived from information obtained" through unconstitutional means. *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988). One such exception is attenuation. *Id.* Under that doctrine, the People must prove that "the connection between the initial illegality and the evidence has become so attenuated as to dissipate the taint." *Id.*; *see Brown v. Illinois*, 422 U.S. 590, 604 (1975). Three primary factors are relevant in determining whether evidence is sufficiently attenuated: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct."

*People v. Lewis*, 975 P.2d 160, 173 (Colo. 1999) (quoting *Brown*, 422 U.S. at 603-04).

### D. Analysis

¶ 86     Wambolt contends that the statements he made after being advised of his *Miranda* rights should have been suppressed because they were the fruit of his unconstitutional seizure.[8]  Although we agree that Wambolt was unconstitutionally arrested, we nevertheless conclude that the statements were admissible because they were sufficiently attenuated from the unlawful arrest.

¶ 87     When the officers put Wambolt in handcuffs at gunpoint and placed him in the back of the patrol car, they had already frisked both men on the scene and determined that neither had a weapon. Moreover, both men had been compliant and the sergeant said that Wambolt was "very easy to get along with."  At that point, no specific facts supported a reasonable belief that a threat to officer safety required the use of handcuffs and weapons.  *See King*, 16

---

[8] On appeal, Wambolt does not challenge the admission of his statement that he was the man riding the motorcycle.  That statement was voluntarily made to the sergeant before Wambolt was seized.  Rather, he challenges only his post-*Miranda* statements concerning his drinking before riding the motorcycle.

42

P.3d at 810. Thus, in our view, the seizure constituted an arrest. Because the People do not argue that the officers had probable cause to arrest Wambolt, we conclude that his arrest was unconstitutional.

¶ 88　　However, we further conclude that Wambolt's statements were attenuated from his illegal arrest and thus admissible.[9] Although the time between the illegal arrest and the interrogation was relatively brief — approximately eleven minutes — Wambolt was alone during that time and not subjected to questioning. *See Lewis*, 975 P.2d at 174 ("The first factor, temporal proximity, is the least determinative factor involved."). Further, intervening circumstances significantly attenuated the taint of the illegal arrest. Before interrogating Wambolt, the officers removed him from the

---

[9] We note that the People invoke the inevitable discovery doctrine, arguing that the officers would have inevitably discovered and talked to Wambolt because he was on the scene and because they would have eventually realized they had first arrested the wrong man. We do not believe that doctrine is applicable here. "The inevitable discovery exception does not invite speculation about possible series of events under which the evidence may have been discovered, but requires an affirmative showing of a reasonable probability that the evidence would inevitably be discovered through *lawful means already initiated* when the seizure was made." *People v. Syrie*, 101 P.3d 219, 223 (Colo. 2004) (emphasis added). There was no such showing here.

patrol car and removed his handcuffs. The officers had also holstered their weapons at that point. Moreover, Wambolt was advised of his rights under *Miranda* and voluntarily waived them. Finally, we acknowledge that the officers' actions were aimed at investigating a possible weapons offense and any misconduct was not flagrant.

¶ 89    Thus, we conclude that Wambolt's statements were admissible, and therefore we affirm the trial court's denial of the motion to suppress.

## V. Conclusion

¶ 90    We affirm the judgment of conviction for DWAI and DUR, vacate the conviction for ADARP, and remand for the trial court to reinstate the DARP conviction and for correction of the mittimus accordingly.

JUDGE BERNARD and JUDGE WELLING concur.