The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2020

## 2020COA92

**No. 18CA2025, *People v. Rau* — Justification and Exemptions from Criminal Responsibility — Use of Deadly Physical Force Against an Intruder**

Under specified circumstances, section 18-1-704.5, C.R.S. 2019, creates immunity from prosecution for the occupant of a dwelling who uses deadly physical force against an intruder. A division of the court of appeals disagrees with the holding of *People v. Cushinberry*, 855 P.2d 18 (Colo. App. 1992), that the common areas of an apartment building did not constitute a dwelling for purposes of the statute. The division instead applies *People v. Jiminez*, 651 P.2d 395, 396 (Colo. 1982), and concludes that the basement of the building where defendant lived — which was accessible to all of the building's tenants and used to access heat and water controls — was part of his dwelling. The division affirms

the district court's decision finding defendant immune from prosecution for the use of deadly physical force against an intruder in the basement.

COLORADO COURT OF APPEALS **2020COA92**

Court of Appeals No. 18CA2025
El Paso County District Court No. 17CR1657
Honorable Jann P. DuBois, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Patrick Rau,

Defendant-Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE TERRY
Freyre and Lipinsky, JJ., concur

Announced June 11, 2020

Daniel May, District Attorney, Doyle Baker, Senior Deputy District Attorney,
Amy Fitch, Senior Deputy District Attorney, Colorado Springs, Colorado, for
Plaintiff-Appellant

The Bussey Law Firm, P.C., Timothy R. Bussey, Colorado Springs, Colorado,
for Defendant-Appellee

¶ 1     The People appeal the district court's order finding that defendant, Patrick Rau, is immune from prosecution under section 18-1-704.5(2)-(3), C.R.S. 2019.  Under specified circumstances, the statute prevents prosecution of the occupant of a dwelling who uses deadly physical force against an intruder.  Because we conclude that the basement of the building where Rau lived — which was accessible to all tenants of the building — was part of his dwelling for purposes of the statute, we affirm the district court's order.

## I.     Background

¶ 2     Rau was indicted by a grand jury for second degree murder (heat of passion).  Before trial, he moved to dismiss the charge against him, arguing that he was immune from prosecution under section 18-1-704.5.  Following a hearing on the motion, the district court dismissed the charge against Rau based on the following findings of fact.

¶ 3     Rau lived with his girlfriend in a single-family house that had been subdivided into seven apartments.  All seven apartments shared access to the building's basement, which was uninhabitable.  Tenants could enter the basement to get to the controls for their

apartments' water and heat supply. The basement could be accessed through the back door of the house.

¶ 4    In the early morning of January 19, 2017, Rau's girlfriend noticed that the door to the basement was open. After she told him that she suspected that a homeless person was in the basement, Rau — armed with a gun and wearing a headlamp — went to the basement to investigate.

¶ 5    Rau found D.R. sleeping in the basement, and nudged the man with his foot to wake him. When Rau told D.R. to leave, D.R. became aggressive and began to yell and throw things around, though not at Rau. Rau said that he had a gun and would "count to five" before shooting if D.R. did not leave. Rau then loudly counted to five, and when D.R. did not leave, Rau fatally shot him.

## II.   Double Jeopardy

¶ 6    As an initial matter, Rau contends that the court's order granting his motion to dismiss and finding him immune from prosecution was the functional equivalent of an acquittal, so that any trial on the charge would violate double jeopardy. Reviewing his claim de novo, *People v. Wambolt*, 2018 COA 88, ¶ 8, we disagree.

¶ 7    Under the Double Jeopardy Clauses of both the United States and Colorado Constitutions, the state may not punish a person twice for the same offense.  U.S. Const. amend. V; Colo. Const. art. II, § 18; *People v. Porter*, 2015 CO 34, ¶ 9.  For a defendant to show a violation of his constitutional right to be free from double jeopardy, jeopardy must have attached at the first proceeding, that proceeding must have concluded, and the defendant must have been exposed to a second, or double, jeopardy.  *Porter*, ¶ 9.

¶ 8    Jeopardy attaches when the jury is sworn during a jury trial, when the first prosecution witness is sworn during a bench trial, or when the court has accepted a guilty plea.  *Id.*  Jeopardy only attaches when the defendant is present at a judicial proceeding aimed at reaching a *final* determination of his guilt or innocence. *People v. Paulsen*, 198 Colo. 458, 460, 601 P.2d 634, 636 (1979).

¶ 9    Because none of those events took place here, jeopardy never attached, and Rau's double jeopardy rights are not violated by the prosecution's appeal.  *See Serfass v. United States*, 420 U.S. 377 (1975) (the defendant's double jeopardy right was not violated where the government appealed after the district court dismissed his indictment).

### III. Finality

¶ 10    We also reject Rau's argument about lack of finality of the judgment. He maintains that if the court's order was not an acquittal but was merely a pretrial order, then it was not a final judgment and this court lacks jurisdiction to review it.

¶ 11    Section 16-12-102(1), C.R.S. 2019, which allows the prosecution to appeal any decision of a court in a criminal case upon any question of law, precludes his argument. It provides that "[a]ny order of a court that either dismisses one or more counts of a charging document prior to trial or grants a new trial after the entry of a verdict or judgment shall constitute a final order that shall be immediately appealable . . . ." § 16-12-102(1).

¶ 12    A final judgment is one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings. *People v. Gabriesheski*, 262 P.3d 653, 657 (Colo. 2011). In *Gabriesheski*, our supreme court held that a trial court's order dismissing all the charges against a defendant is a final appealable order because "[t]he dismissal of all charges in a criminal prosecution clearly ends the particular action

in which the order of dismissal is entered and therefore constitutes a final judgment for purposes of the appellate review of any ruling in the case." *Id.*

¶ 13    Applying *Gabriesheski*, we conclude that the order dismissing the charge against Rau was a final appealable order that is properly before us because dismissal of the only charge against him ended the action.

## IV.  "Dwelling"

¶ 14    The People argue that the district court erred in concluding that the basement in Rau's building was a "dwelling" for purposes of section 18-1-704.5(2)-(3).  We disagree.

¶ 15    Subsections (2) and (3) confer immunity from prosecution on "any occupant of a dwelling" who uses force under the circumstances set forth in the statute.  *People v. Alaniz*, 2016 COA 101, ¶ 24.  "Dwelling" means a building that is used, intended to be used, or usually used by a person for habitation.  § 18-1-901(3)(g), C.R.S. 2019.  "'Building' means a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property . . . whether or not a person or animal is actually present." § 18-4-101(1), C.R.S. 2019.

¶ 16    In *People v. Jiminez*, 651 P.2d 395, 396 (Colo. 1982), our supreme court determined that the garage of a residence met the statutory definition of "dwelling" for purposes of the burglary statute. The court reasoned that

> [t]he statutory definition of ["]dwelling["] comprehends an entire building. There is no room in the language of that clearly worded statute to exclude from the meaning of ["]dwelling["] those parts of a residence that are not "usually used by a person for habitation." Moreover, at least some of the usual uses of a residential garage, including storage of household items, are incidental to and part of the habitation uses of the residence itself.

*Id.*

¶ 17    We conclude that under *Jiminez,* Rau's basement was a "dwelling" for purposes of section 18-1-704.5. Although the basement was uninhabitable and was accessible to all tenants of the building, it was nonetheless part of the building that was used by Rau for habitation. The basement was the only place where Rau could adjust the heat and water controls for his apartment, and therefore it involved uses that were "incidental to and part of the habitation uses of the residence itself." *Jiminez,* 651 P.2d at 396.

6

The district court therefore did not err in concluding that the basement was part of Rau's dwelling.

¶ 18     The People rely on the holding of a division of this court that the common areas of an apartment building do not constitute a dwelling for purposes of section 18-1-704.5.  *See People v. Cushinberry*, 855 P.2d 18, 19 (Colo. App. 1992).  They argue that because the basement was a common area used by all of the building's tenants, it was not part of Rau's dwelling.  We decline to adopt *Cushinberry*'s holding because it is inconsistent with *Jiminez*.  The term "dwelling," as used in the statute and interpreted in *Jimenez*, does not make an exception for common areas that are contained within a dwelling.

¶ 19     We are also not persuaded by the People's contention that because *Jiminez* addressed the burglary statute, the supreme court's interpretation of "dwelling" does not apply to section 18-1-704.5.  Section 18-1-901, which defines "dwelling," states that "[d]efinitions set forth in any section of this title [the criminal code] apply wherever the same term is used in the same sense in another section of this title unless the definition is specifically limited or the context indicates that it is inapplicable."  § 18-1-901(1).  Because

section 18-1-704.5 does not contain its own definition of "dwelling," we must rely on the definition in section 18-1-901(3)(g), on which *Jiminez* also relied.

V.    Sufficiency of the Evidence to Establish Statutory Immunity

¶ 20    The People contend that the evidence was insufficient to show that (1) Rau held a reasonable belief that D.R. might use physical force against him, no matter how slight, or that (2) Rau held a reasonable belief that D.R. committed or intended to commit another crime in addition to D.R.'s unlawful entry into the building. We disagree.

¶ 21    We review de novo a challenge to the sufficiency of the evidence, determining whether the evidence is sufficient in both quality and quantity to satisfy the applicable burden of proof, *People v. Ortiz*, 2016 COA 58, ¶ 26, which here was merely a preponderance of the evidence, *People v. Guenther*, 740 P.2d 971, 972 (Colo. 1987).

¶ 22    The resolution of conflicts in testimony and determinations of the credibility of the witnesses are solely within the province of the fact finder. *People v. Fuentes*, 258 P.3d 320, 326 (Colo. App. 2011). We defer to the court's factual findings unless they are so clearly

erroneous as to find no support in the record. *Alaniz*, ¶ 40. We review de novo whether the court applied the correct legal standard. *Id.*

¶ 23    When section 18-1-704.5(3) is invoked prior to trial as a bar to a criminal prosecution, the burden is on the defendant seeking the benefit of the statutory immunity to establish the following by a preponderance of the evidence: (1) another person made an unlawful entry into the defendant's dwelling; (2) the defendant had a reasonable belief that such other person had committed a crime in the dwelling in addition to the uninvited entry, or was committing or intended to commit a crime against a person or property in addition to the uninvited entry; (3) the defendant reasonably believed that such other person might use physical force, no matter how slight, against any occupant of the dwelling; and (4) the defendant used force against the person who actually made the unlawful entry into the dwelling. *Guenther*, 740 P.2d at 975.

¶ 24    After hearing evidence on Rau's motion to dismiss, the court found that Rau held a reasonable belief that D.R. would use physical force against him, and also held a reasonable belief that

9

D.R. committed or intended to commit a crime while on the property. According to the court's findings, when Rau asked D.R. to leave, D.R. started shouting back at Rau, became aggressive, and made violent motions. The court said, "So clearly we have an intimidation at that point in time," and noted that the parties were "five to six feet apart" and "in a dark basement." Rau told D.R. immediately that he had a gun. The court found that at that point,

> [D.R.] started to escalate his behavior, screaming more, started throwing things. So we have menacing, and the potential assault of the defendant by [D.R.]. . . .
> [T]he Court finds that there has been by a preponderance of the evidence a showing that there was a reasonable belief by [Rau] that [D.R.] had either already committed a crime, which was drug usage, on the premises, or was going to commit a crime, which is a potential assault upon [Rau].
> [Rau] then had a reasonable belief that [D.R.] would use physical force no matter how slight [based upon D.R.'s actions]. [Rau] told [the detective] that he thought [D.R.] was on drugs by his behavior, and that then resulted in [Rau] giving [D.R.] the final warning when [D.R.'s] behavior was escalating. He used that force and shot [D.R.].

The court found that the defense had met all of the requirements for immunity from prosecution under the immunity statute.

10

¶ 25     The record supports the court's findings by a preponderance of the evidence. The detective who interviewed Rau following the incident testified that Rau told him that when he warned D.R. to leave, D.R. became more aggressive and started to yell and throw things, and Rau was scared that D.R. was going to charge at him. The detective also testified that Rau believed that D.R. was using drugs because Rau found drug paraphernalia in and around the basement when he went to confront D.R.

¶ 26     This evidence was sufficient to support a finding that Rau reasonably believed D.R. was going to use physical force against him, no matter how slight, and that he reasonably believed that D.R. had committed a crime or intended to commit a crime against a person or property in the building. As a result, this evidence was sufficient to establish Rau's statutory immunity from prosecution.

## VI.   Conclusion

¶ 27     The order is affirmed.

JUDGE FREYRE and JUDGE LIPINSKY concur.

11