24CA1655 White v Peryam 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1655
Chaffee County District Court No. 20CV30046
Honorable Amanda Hunter, Judge
Honorable Douglas S. Walker, Judge

Jonathan White,

Plaintiff-Appellant,

v.

Thomas R. Peryam and Patricia A. Chivvis,

Defendants-Appellees.

_____

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

_____

Jonathan White, Pro Se

The Nettleton Law Firm, Sandra J. Nettleton, Aurora, Colorado; Coruscate
PLLC, Catherine Hulme, Fort Collins, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Jonathan White, appeals the district court's judgment entered after a bench trial resolving his dispute with defendants, Thomas R. Peryam and Patricia A. Chivvis (collectively, the landlords). We affirm.

## I.     Background

¶ 2     In June 2018, White and the landlords entered into a written lease allowing White to graze cattle and keep horses on their 160-acre ranch. The lease was for a term of five years and contained a termination clause allowing either party to terminate the lease by giving at least one month's notice.

¶ 3     In the winter of 2018 to 2019, White left his cattle on the ranch under the supervision of a hired hand while he worked elsewhere. White claimed that, when he returned to the ranch in April 2019, the cattle were malnourished, so he had to remove most of them from the ranch and move them to another pasture to graze. The landlords said that White removed his cattle because they terminated the lease.

¶ 4     In the summer of 2019, White returned to the ranch to irrigate the property and perform other work. The landlords said that White irrigated the ranch to compensate for the damage his cattle had

done to the property the prior winter and for the chance to bring his cattle back in the spring of 2020. White asserted he did the work on the ranch in exchange for not paying rent in 2019. White also alleged that the landlords did not terminate the lease until early September 2019 and that the short notice caused him to have to sell his cattle quickly at a significant loss.

¶ 5 In September 2020, White filed a complaint against the landlords, asserting a claim for fraudulent inducement and seeking declarations that the lease's termination provision was unenforceable and that he retained a leasehold interest in the ranch. White alleged that, to induce him to enter into the lease, Peryam "made specific representations" that the landlords "would never exercise nor attempt to exercise the [t]ermination [c]lause." White also alleged that the termination clause was "unconscionable, and therefore unenforceable," and was "drafted in plain violation of the written requirements and timelines" in section 13-40-107, C.R.S. 2025.

¶ 6 Alternatively, White asserted claims for breach of the lease and unjust enrichment. He alleged that the landlords "breached the [l]ease's plain terms" through "verbal termination of the [l]ease with

2

less than a month's notice." And he alleged that the landlords received the benefit of services he performed on the ranch without compensating him for his labor.[1]

¶ 7    The landlords counterclaimed for breach of the lease and, alternatively, unjust enrichment. They alleged that White breached the lease by failing to do the following: pay rent for 2019, clean out a ditch, maintain the fences and corral, limit the number of grazing cattle, and compensate them for damage he or his hired men caused to the ranch.

¶ 8    In June 2024, the case proceeded to a three-day bench trial. The district court issued written findings of fact and conclusions of law, ruling in relevant part as follows:

- White's fraudulent inducement claim failed because, even if Peryam said he would not act on the termination clause, White did not prove that Peryam knew, when he made the statement

---

[1] White originally asserted claims for fraudulent inducement, declaratory judgment, and breach of lease (in the alternative). Although White moved to amend his complaint to add several other claims, the district court granted him leave to add only an unjust enrichment claim.

or when the lease was signed, that the landlords would later invoke the termination clause.

- The parties waived application of section 13-40-107, which requires ninety-one days' written notice prior to termination, by agreeing to termination on thirty-days' notice and not requiring that the notice be in writing.

- The landlords terminated the lease in the spring of 2019 and provided more than a month's notice.

- White proved he did work on the ranch after the lease was terminated and it would be unjust for the landlords to retain the benefit of that work without paying for it.

- White was not required to pay rent for 2019 because the landlords terminated the lease in April 2019 before the end of the first lease year.

- White breached the lease by having more cattle than the lease allowed and was responsible for damage caused by the overgrazing. White was also responsible for damage to the landlords' fences, dam, and irrigation ditches.

- The landlords' unjust enrichment claim failed because the court awarded damages for breach of the lease.

- Both sides proved that they incurred damages.  The net award was in White's favor in the amount of $1,081.92.

¶ 9    The landlords moved for "clarification" that they were the prevailing parties entitled to costs under C.R.C.P. 54(d).  White responded and requested reconsideration of several parts of the order.  The court treated both the landlords' motion and White's response as C.R.C.P. 59 motions (although White's motion was not timely filed) and denied them.  It clarified that White was the prevailing party entitled to costs.  White appeals.

¶ 10   Although White has been represented by counsel at various times in the district court, he indicates that he has drafted his own appellate briefs without the assistance of counsel.  As a result, we construe his briefs broadly to ensure that he is not denied review because of an inability to articulate his arguments like a lawyer. *Jones v. Williams*, 2019 CO 61, ¶ 5.  Even so, it is not our role to rewrite his briefs or act as his advocate.  *Johnson v. McGrath,* 2024 COA 5, ¶ 10.

## II.     Notice of Termination

¶ 11     White contends that the district court erred by concluding that the parties waived the statutory notice requirements of section 13-40-107.[2]  We are not persuaded.

### A.     Standard of Review and Generally Applicable Law

¶ 12     The interpretation of a lease, like any other contract, is a question of law that we review de novo.  *Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC*, 128 P.3d 245, 246 (Colo. App. 2004).  Because we "recognize a strong policy of freedom of contract," we must interpret contracts "in a way that best effectuates the intent of the parties and allows each party to receive the benefit of the bargain."  *Ravenstar, LLC v. One Ski Hill Place, LLC*, 2017 CO 83, ¶ 12 (citation omitted).

¶ 13     "Parties to a contract may agree on whatever terms they see fit so long as those terms do not violate statutory prohibitions or public policy."  *S. Conejos Sch. Dist. RE-10 v. Wold Architects Inc.*,

---

[2] To the extent White also cites section 13-40-104, C.R.S. 2025, we note that statute addresses the notice required to evict a tenant for unlawful detention.  Because White was not evicted, this statute does not apply.  Even so, the requirements of section 13-40-104 may be waived by contract.  *See Francam Bldg. Corp. v. Fail*, 646 P.2d 345, 349 (Colo. 1982).

6

2023 COA 85, ¶ 24. Parties may even enter into contracts abrogating or limiting statutory provisions that confer a right or benefit on them. *Francam Bldg. Corp. v. Fail*, 646 P.2d 345, 349 (Colo. 1982); *Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 28.

¶ 14 We also interpret statutes de novo. *Ferguson v. Spalding Rehab., LLC*, 2019 COA 93, ¶ 8. In doing so, we strive to give effect to the legislature's intent, giving the words and phrases their plain and ordinary meanings. *Id.* at ¶ 10.

## B. Analysis

¶ 15 Under section 13-40-107(1), (2)(a), a landlord of a nonresidential real property may terminate a lease for a fixed term of one year or longer by providing written notice at least ninety-one days before the end of the term. The statute does not prohibit a tenant or landlord from waiving the notice requirements or agreeing to different termination terms. *See id.* Indeed, where the legislature has intended to limit parties' ability to waive statutory requirements, it has done so expressly. *See, e.g.,* § 38-38-703, C.R.S. 2025 ("A waiver of or agreement to shorten the time period to exercise the right to cure a default granted by the provisions of this article that is made before the date of the default as to which the

7

waiver is granted under a deed of trust, mortgage, or other instrument evidencing a lien or an evidence of debt secured thereby shall be void as against public policy."). We see no such intent reflected in section 13-40-107.

¶ 16    Under the lease's termination provision,

> [t]he Lease may be terminated by Lessor or Lessee.  Lessor shall be required to give Lessee at least one (1) month notice when the Lease is to be terminated.  Likewise, Lessee shall be required to give Lessor at least one (1) month notice of termination of the Lease.

¶ 17    The district court determined that the lease's termination provision plainly provided for "one month's notice and there [was] no requirement that the notice be in writing."  Based on the lease's plain terms, the court determined that the parties waived the statutory notice requirements.  We perceive no error.

¶ 18    The termination provision is clear and unambiguous.  *See Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("[W]here a contract is clear and unambiguous, courts must give effect to the plain and ordinary meaning of its terms.").  The provision allows the landlords to terminate the lease with thirty days' notice.  There is no requirement that the termination be in writing.  And White does not

8

assert that he did not understand the provision. When a tenant agrees to waive the benefit of statutory notice provisions, "he should be held to his bargain." *Francam*, 646 P.2d at 349. Accordingly, we conclude that the court correctly determined that the parties waived the statutory notice requirements through the terms of the lease.

¶ 19 Even so, White contends that the court erred for three reasons: (1) the termination provision was not explicit enough to waive the statutory notice requirements; (2) a provision allowing for termination of an agricultural grazing lease with only thirty days' notice contravenes public policy; and (3) the statute should act as a gap filler requiring written notice when the lease is silent regarding the form of notice. We conclude that White did not preserve these arguments.

¶ 20 White did not argue that the language of the termination provision was not explicit enough to waive the notice requirements in section 13-40-107 until his untimely C.R.C.P. 59 motion. Raising an issue for the first time in a Rule 59 motion does not preserve that issue for appellate review. *See Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66 (arguments made for the first time in a post-trial motion are deemed

waived for purposes of appeal); *People v. Schaufele*, 2014 CO 43, ¶ 49 (Boatright, J., concurring in the judgment) ("Motions for reconsideration are designed to correct erroneous court rulings; they are not designed to allow parties to present new legal arguments for the first time and then appeal their denial . . . ."). And White never argued to the district court that the termination provision violated public policy or that section 13-40-107 should act as a gap filler for terms not included in the lease. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal."); *In re Estate of Owens*, 2017 COA 53, ¶ 21 (no talismanic language is required to preserve an issue for appellate review, but the issue must be brought to the trial court's attention and ruled upon).

¶ 21    Unpreserved civil claims are "very rarely" reviewed "and only 'where necessary to prevent manifest injustice.'" *In re Estate of Ramstetter*, 2016 COA 81, ¶ 73 (citations omitted); *see Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1269 (Colo. App. 2010) (applying plain error review in civil cases involves "'unusual or special' circumstances" and only "when necessary to

avert unequivocal and manifest injustice" (citations omitted)). White summarily requests that we review his unpreserved contentions, but he does not explain why we should do so in the interest of justice. And we fail to see any particular injustice in enforcing an unambiguous contract provision. Accordingly, we decline to review White's unpreserved contentions. *See Roberts v. Am. Fam. Mut. Ins. Co.*, 144 P.3d 546, 549 (Colo. 2006) (appellate courts have discretion to review unpreserved civil errors).

¶ 22 We conclude that the district court did not err when it ruled that the landlords did not have to comply with section 13-40-107 when terminating the lease. *See Ravenstar*, ¶ 9; *Dinnerware Plus Holdings, Inc.*, 128 P.3d at 246.

## III. Evidentiary Contentions

¶ 23 As best we understand, White challenges the district court's decision to exclude three categories of evidence: (1) evidence of how the landlords became the owners of the ranch; (2) evidence of the landlords' motive to enforce the termination clause as retaliation; and (3) a ranch hand's statement. We see no reason to reverse.

## A. Standard of Review

¶ 24     We review a trial court's evidentiary rulings for an abuse of discretion. *Zapata v. People*, 2018 CO 82, ¶ 25. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or if it misconstrues or misapplies the law. *People v. Liggett*, 2021 COA 51, ¶ 16, *aff'd*, 2023 CO 22.

## B. Additional Background

¶ 25     At a pretrial conference, Judge Amanda Hunter, the first judge to preside over the case, addressed the landlords' objections to several exhibits that White proposed to introduce at trial. These exhibits pertained to proof of the landlords' ownership of the ranch and the competency of their mother before she passed. Although White was not contesting who owned the ranch, he argued that the evidence should be admitted because, before the landlords owned the property, they asked White to falsely testify that their mother was incompetent when she rewrote her will a month before her death to exclude the landlords from inheriting her estate, but White refused. Litigation over the mother's estate was ongoing when the landlords entered into the grazing lease with White. White argued

that the evidence was relevant to the landlords' bias, credibility, and motive to retaliate against him by terminating the lease.

¶ 26 Judge Hunter ruled that the ownership of the ranch was not relevant because it was undisputed that landlords owned the property when they entered into the lease with White. She also ruled that the mother's competency was not relevant. As a result, Judge Hunter excluded the exhibits White sought to offer. But she told White that if he wanted to offer evidence that Peryam asked White to perjure himself or that the landlords claimed ownership of property they did not own to show their motive or character for truthfulness, she would consider that evidence if White made an adequate showing at trial that it was relevant and admissible under the procedures set forth in CRE 404, 405, and 608.

¶ 27 After the hearing, White moved the court to reconsider the admissibility of his exhibits. Judge Hunter denied the motion based on her ruling at the hearing.

¶ 28 On the first day of trial, White asked Judge Douglas Walker, the judge who presided over the bench trial, to "rule on [his] last submission regarding . . . admissibility." Judge Walker declined to reconsider Judge Hunter's ruling, stating that he agreed with her

13

logic and that the evidence was not admissible because it was "too far afield" and "a waste of all of our time." But consistent with Judge Hunter's ruling, Judge Walker advised White that he could ask questions about some of the evidence so long as he complied with the relevant rules of evidence related to character witnesses.

¶ 29    At trial, White sought to offer evidence regarding how the landlords came to be owners of the ranch, details of the dispute around the mother's competency, and a statement a ranch hand made to him about what Peryam said regarding White's cattle being neglected. The district court precluded White from offering evidence about ownership and competency because it was irrelevant, and it precluded the ranch hand's statement because it was hearsay.

## C.    Motion to Reconsider

¶ 30    White contends that (1) Judge Hunter erred by denying his motion to reconsider the admissibility of his exhibits without any substantive analysis, and (2) Judge Walker erred by reversing Judge Hunter's ruling that the ownership and competency evidence was admissible. We disagree.

¶ 31    Judge Hunter preliminarily ruled that evidence of ownership and the mother's competency was irrelevant and excluded

14

documentary exhibits addressing those topics. White moved to reconsider that ruling. To the extent White claims he did not receive a reasoned ruling on his motion to reconsider, the record refutes this claim. Judge Hunter denied the motion before trial based on her ruling at the pretrial conference.

¶ 32     Then, on the first day of trial, Judge Walker declined to reverse Judge Hunter's ruling, explaining that the evidence was not relevant. Even so, Judge Walker said he would allow White to ask certain questions relating to character as allowed by the rules of evidence, which was consistent with Judge Hunter's pretrial ruling that White could introduce evidence of motive and character for truthfulness if he complied with CRE 404, 405, and 608. Both judges explained their reasoning. And contrary to White's claim, the "abrupt judicial reassignment of the case" from Judge Hunter to Judge Walker did not result in a reversal of "previously established evidentiary rulings without substantive justification." Judge Walker did not reverse Judge Hunter's pretrial ruling.

¶ 33     We conclude that White has failed to show any reversible error. *See Vogel v. Carolina Int'l, Inc.*, 711 P.2d 708, 715 (Colo. App. 1985) (the party asserting error has the burden to establish it); *Rego*

*Co. v. McKown-Katy*, 801 P.2d 536, 540 (Colo. 1990) ("[T]he burden is on the party asserting the error to show reversible error.").

## D. Ownership

¶ 34 White contends that the district court erred by excluding evidence of how the landlords became owners of the ranch because it was relevant to his claims, which involved "questions of character and truthfulness." We are not persuaded.

¶ 35 All relevant evidence is admissible unless prohibited by the United States or Colorado Constitutions, a state statute, the rules of evidence, or any other supreme court rule. CRE 402; *see Alhilo v. Kliem*, 2016 COA 142, ¶ 9. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 36 White never disputed that the landlords owned the ranch when the parties entered into the grazing lease. White fails to explain why the events leading up to the landlords becoming the owners are relevant to his claims of fraudulent inducement, breach of the lease, or unjust enrichment. In particular, the fraudulent inducement claim, which is the claim White seems to focus on

16

when arguing that the landlords' character for truthfulness is relevant, was based on White's allegation that Peryam told White that the landlords would never exercise the termination provision; it did not relate to how or when the landlords came to own the ranch. Because White failed to explain how evidence of ownership made any fact of consequence more or less probable, we conclude the district court did not abuse its discretion by excluding the evidence. *See* CRE 401; *Zapata,* ¶ 25; *Liggett,* ¶ 16.

### E.    Motive

¶ 37    White contends that the district court erred by excluding evidence that Peryam asked White to perjure himself because it was admissible under CRE 404(b), 405(b), and 608 as evidence of the landlords' motive to enforce the termination clause as retaliation. We are not persuaded.

¶ 38    Under CRE 404(b), evidence of other crimes, wrongs, or acts may be admitted, as relevant, to show motive or intent.  And CRE 405(b) allows proof of specific instances of a person's conduct when the character or trait of a person is an essential element of a claim. But such evidence may be admitted under CRE 608 in only two ways: (1) "[t]he credibility of a witness may be attacked or supported

17

by evidence in the form of opinion or reputation," CRE 608(a); and (2) "[s]pecific instances of the conduct of a witness, for the purpose of attacking . . . the witness' character for truthfulness . . . may not be proved by extrinsic evidence" but may, "in the discretion of the court, . . . be inquired into on cross-examination of the witness," CRE 608(b).

¶ 39 The evidence White sought to admit — namely, that Peryam asked White to lie under oath — was a specific instance of Peryam's conduct, which White sought to admit to attack Peryam's character for truthfulness. Under CRE 608(b), White was only allowed admit that evidence during cross-examination of Peryam. To the extent White sought to admit the evidence through Chivvis or his own testimony, CRE 608(b) prohibited him from doing so.

¶ 40 To the extent White attempted to introduce evidence of motive through Peryam's cross-examination — the only authorized method for its introduction, *see* CRE 608(b) — White has not persuaded us that the district court abused its discretion by concluding that the evidence was irrelevant. As best we understand, White contends that the evidence shows retaliatory motive — he claims that the landlords lied to him about enforcing the termination provision to

18

get revenge on him for refusing to perjure himself in their mother's competency proceedings. But the court reasoned that the evidence was "too far afield" to be relevant for that purpose. The court knew what evidence White intended to offer and concluded that the evidence was too attenuated to make it more likely that Peryam lied when he told White that the landlords would not enforce the termination provision. Based on that rationale, we cannot conclude that the court abused its discretion by excluding the evidence. *See Hall v. Moreno*, 2012 CO 14, ¶ 54 (When reviewing a trial court's decision for abuse of discretion, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options." (citation omitted)).

## F. Ranch Hand's Testimony

¶ 41 White testified that when he returned to the ranch in 2019, he asked his hired ranch hand what happened to his emaciated cattle. White continued, "His response was Mr. Peryam told me that was the only place I could feed your cattle on the ranch . . . ." The landlords' counsel objected to hearsay, and the district court sustained the objection, explaining to White that "what Peryam told

19

somebody else is not [hearsay], but what the young man relayed to you is." White contends that the court erred. We disagree.

¶ 42     Hearsay is any "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). CRE 802 prohibits the admission of hearsay unless the statement falls under an exception. When a statement contains multiple layers of hearsay, each layer must be separately analyzed to determine whether a recognized exception applies. *See* CRE 805; *Bernache v. Brown*, 2020 COA 106, ¶ 14.

¶ 43     Peryam's statement was not hearsay because it was a statement by a party-opponent offered against him. *See* CRE 801(d)(2). Had Peryam made the statement directly to White and White testified to that statement at trial, there would be no hearsay problem. But what the ranch hand said to White was hearsay because it was an out-of-court statement by a third party (the ranch hand) offered for the truth of the matter asserted (what Peryam said). CRE 801(c). And White has not explained how the ranch hand's statement satisfied any exception to the rule against hearsay. CRE 802. Accordingly, we conclude that the district court

did not abuse its discretion by excluding the testimony. *See Zapata*, ¶ 25; *Liggett*, ¶ 16.

## IV.  Procedural Irregularities

¶ 44 White contends that the district court erred when it (1) allowed defense counsel to coach a witness; (2) dispensed with closing arguments; (3) reassigned the case to a new judge for trial without notice; (4) denied White's C.R.C.P. 59 motion as untimely; and (5) displayed bias. We reject each contention.

### A.  Coaching a Witness

¶ 45 White contends that the district court erred by failing to stop the landlords' counsel from coaching a witness. We disagree.

¶ 46 A trial court "is obligated to administer justice, control the decorum of the courtroom, and make sure that cases are decided on appropriate grounds." *Makeen v. Hailey*, 2015 COA 181, ¶ 38. The court has broad discretion to achieve those aims. *See id.*

¶ 47 On the second day of trial, White told the district court that he believed counsel was "making facial expressions," nodding her head, and making hand gestures to coach Chivvis. The court indicated that it had heard "some sort of coaching going on from

21

somewhere" but that it had stopped after the court commented on it. The court said that it trusted the attorneys to act appropriately.

¶ 48 White did not ask the court for further relief; rather, he told the court, "I just wanted you to be aware of that so that it doesn't happen again." *See Forgette v. People*, 2023 CO 4, ¶ 24 ("[W]hen a court takes curative action after a party brings an issue to the court's attention and the party fails to object or ask for further relief, any complaint that the court neglected to do more is unpreserved."). White does not point to any instances of coaching or alleged inappropriate behavior after the court admonished the parties and counsel. Nor does he identify any prejudice stemming from the alleged coaching. *See* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 49 On this record, we conclude that the court controlled the decorum of the courtroom, and we perceive no abuse of discretion by the court in declining to do more. *See Makeen*, ¶ 38.

### B. Closing Argument and Reassignment of the Case

¶ 50 White contends that the district court erroneously denied him the ability to make a closing argument and that the "abrupt" reassignment of the case to Judge Walker for trial left White unable to prepare. But White did not object to Judge Walker presiding over the trial, nor did he object when the court explained that it would not allow closing arguments. Thus, we conclude that White failed to preserve these challenges, and we decline to address them further. *See Ramstetter*, ¶ 73.

### C. Denial of the Untimely Motion to Reconsider

¶ 51 For the first time in his reply brief on appeal, White appears to contend that he was unaware of the deadline to file a C.R.C.P. 59 motion and that the district court erroneously denied his motion as untimely. But we do not address arguments raised for the first time in a reply brief. *IBC Denv. II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 718 (Colo. App. 2008).

### D. Bias

¶ 52 To the extent White argues that the district court was biased against him, he does not adequately develop the argument for our consideration. *See S. Colo. Orthopaedic Clinic Sports Med. &*

23

*Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 35 (declining to address conclusory argument presented without authority); *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (Appellate courts "will not consider a bald legal proposition presented without argument or development."). In addition, White does not point to anything in the record beyond the court's adverse rulings, which are insufficient to support a claim of bias. *See In re Marriage of Johnson*, 576 P.2d 188, 190 (Colo. App. 1977) ("Adverse rulings, standing alone, do not constitute grounds for claiming bias or prejudice . . . .").

## V. The Lease Termination Date

¶ 53 White contends that the district court erred by finding that the landlords terminated the lease in April 2019. We are not persuaded.

## A. Standard of Review

¶ 54 "A trial court's judgment following a bench trial presents a mixed question of law and fact." *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 33. We defer to the trial court's determinations of credibility and will not disturb its findings of fact unless they are clearly erroneous and unsupported

24

by the record. *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 115 (Colo. App. 2007). "If the evidence is conflicting, we may not substitute our own conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 66 (citation omitted).

¶ 55 In civil cases, the court must make its findings by a preponderance of the evidence. *See* § 13-25-127(1), C.R.S. 2025. That standard requires only that the court find a fact to be more probable than not. *See City of Littleton v. Indus. Claim Appeals Off.*, 2016 CO 25, ¶ 38.

### B. Analysis

¶ 56 We first note that the parties dispute preservation. But because "a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings," *People in Interest of D.B.*, 2017 COA 139, ¶ 30, we address the merits of White's contention. *See* C.R.C.P. 52 ("Neither requests for findings nor objections to findings rendered are necessary for purposes of review."); *In re Marriage of Stradtmann*, 2021 COA 145,

¶¶ 8-10 (a party was not required to object to a court's oral rulings at the conclusion of a hearing to preserve his appellate arguments).

¶ 57      The district court found by a preponderance of the evidence that the landlords terminated the grazing lease in April 2019.  The court found that the parties had a conversation in the spring of 2019 that a pond would need to be drained and worked on, which would deprive White's cattle of water.  The court also found that White's voluntary removal of the cattle following this conversation and the fact that White later asked for the landlords' permission to use the corral to wean calves were "indicative of knowledge that the lease [had] ended."

¶ 58      The record supports the court's findings.  The landlords testified that they terminated the lease in April 2019.  White acknowledged that he spoke with Peryam in the spring of 2019 about doing work on the pond.  Chivvis testified that the landlords told White to remove his cattle in April 2019 because they had to drain the pond to do necessary repair work, and there was no other source of water for White's cattle.  And the landlords testified that after White removed his cattle, he asked for permission to bring his calves back to wean.

¶ 59    Still, White highlights the following contradictory evidence:

- the poor health of White's cattle necessitated their removal in May of 2019;

- White was present and continued work on the ranch in the summer of 2019, including storing his belongings, boarding his horses, and performing irrigation work and lease obligations, without objection from the landlords;

- Peryam testified that White irrigated pastures during the summer of 2019, creating feed for the cattle;

- Peryam admitted there was enough water on the ranch for White's horses to survive from June to November 2019;

- a water commissioner testified that water to the pond came from a neighboring property;

- White testified that the ranch had never had an issue with water availability for twenty years; and

- Peryam testified that the pond was not dug out until March 2020, and receipts corroborated that work on the pond occurred in the spring of 2020.

¶ 60    But even if there was contradictory evidence, the district court was in the best position to make credibility determinations and

weigh the evidence. *See Frisco Lot 3 LLC*, ¶ 66. And because the court's findings have record support, we cannot disturb them. *See Skyland*, 184 P.3d at 115; *see also Owens*, ¶ 22 (an appellate court may not reweigh evidence or substitute its judgment for that of the trial court).

¶ 61 To the extent White contends that the court should have found that the landlords waived or were estopped from claiming that they terminated the lease in the spring of 2019, or that equitable considerations mandated a different finding, White failed to raise those arguments before the district court, so we decline to address them. *See Ramstetter*, ¶ 73.

## VI. Damages

¶ 62 White contends that the district court erred in awarding damages because (1) the economic loss rule did not bar his noneconomic damages, and (2) its computation of economic damages was based on erroneous factual findings. We reject these contentions.

## A. Standard of Review

¶ 63 We review a trial court's assessment of damages for clear error. *Blakeland Drive Invs., LLP IV v. Taghavi*, 2023 COA 30M,

¶ 38. The trial court has broad discretion to determine the amount of damages to award. *McDonald's Corp. v. Brentwood Ctr., Ltd.*, 942 P.2d 1308, 1311 (Colo. App. 1997). We will not disturb an award of damages unless it is completely without record support. *Hauser v. Rose Health Care Sys.*, 857 P.2d 524, 531 (Colo. App. 1993).

## B. Economic Loss Rule

¶ 64 White requested both economic and noneconomic damages on his claims of fraudulent inducement and breach of the lease. Specifically, White requested economic damages because he was not given enough time to find an alternative for grazing his cattle and had to sell the cattle at a loss. White also requested damages for the emotional pain and mental anguish he suffered from losing his cattle, which were his passion and livelihood.

¶ 65 White contends that the district court erred by concluding that the economic loss rule barred his request for noneconomic damages. But even if the district court erred in its application of the economic loss rule, any error was harmless because his claims for fraudulent inducement and breach of lease failed for other

reasons.[3]  *See* C.R.C.P. 61; *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (An erroneous ruling only requires reversal if it affects a party's substantial right, and "[a]n error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" (citation omitted)).

## C.    Computation of Damages

¶ 66    To the extent White argues that the court's damages award fails because it is based on an erroneous finding that the landlords terminated the lease in the spring of 2019, we necessarily reject that argument for the reasons discussed in Part V.B.  To the extent White argues that the court erred by not awarding damages on his fraudulent inducement and breach of lease claims, any error is necessarily harmless because, as noted, those claims fail for other reasons.  Thus, we proceed to address White's arguments that the

---

[3] The district court also concluded that White did not prove physical harm, and White does not challenge that part of the order.  *See IBC Denver II, LLC v. City of Wheat Ridge,* 183 P.3d 714, 717-18 (Colo. App. 2008) (when a lower tribunal gives more than one reason for a decision, an appellant must challenge all those reasons on appeal).

record evidence does not support the court's computation of damages on his unjust enrichment claim. We are not persuaded.

¶ 67    The court found that White irrigated the ranch after the lease was terminated, the landlords knew about it, and the landlords did not pay White. Because it would be unjust for the landlords to retain the benefit of White's work without paying him, the court ordered that White was owed $7,350 based on the amount of work he did at an hourly rate of $15.00. White argues this finding was erroneous because it is significantly less than the $27,000 he claimed the work cost.[4] But the court awarded White an hourly wage for the time he irrigated the ranch based on what the landlords said they paid for day laborers, so we understand the

---

[4] White also argues that the district court failed to (1) consider labor costs he performed in lieu of rent and (2) distinguish between repairs and improvements. White does not point us to anywhere in the record where he presented evidence of these damages or to the specific part of the court's order that he is challenging, so we decline to address those contentions further. *See* C.A.R. 28(a)(7)(B) (Arguments "must contain . . . a clear and concise discussion of the grounds upon which the party relies in seeking a reversal . . . , with citations to the authorities and parts of the record on which the appellant relies."); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997).

court's reasoning and its finding enjoys record support. Notably, the court applied the same hourly rate when computing the landlords' damages on their counterclaims.

¶ 68 White points only to his own testimony to support his claim for damages, but the court did not have to accept White's figure. *See In re Marriage of Salby*, 126 P.3d 291, 298 (Colo. App. 2005) ("The trial court can believe all, part, or none of a witness's testimony, even if uncontroverted."). White's contention that the court gave too much weight to the landlords' testimony is similarly unpersuasive because the resolution "of conflicts in testimony and determinations of the credibility of the witnesses are solely within the province of the fact finder." *People v. Rau*, 2020 COA 92, ¶ 22, *aff'd*, 2022 CO 3. Regardless of whether there was conflicting evidence, we cannot disturb the court's finding because it has record support. *See Blakeland*, ¶ 38.

VII. Cumulative Error

¶ 69 Finally, White contends that, even if the alleged errors do not individually require reversal, their cumulative prejudicial impact does. "The doctrine of cumulative error, although applied regularly in criminal appeals, has not been extended to civil cases." *Acierno*

32

*v. Garyfallou*, 2016 COA 91, ¶ 66. Other divisions of this court have declined to extend the doctrine as "[s]uch a significant expansion of precedent . . . is more properly the province of our supreme court." *Id.* (quoting *Neher v. Neher*, 2015 COA 103, ¶ 66). We likewise decline to apply the doctrine here.

## VIII. Disposition

¶ 70    We affirm the judgment.

JUDGE FOX and JUDGE MEIRINK concur.